SKAPURA ET AL., APPELLEES, *v.* THE CLEVELAND ELECTRIC ILLUMINATING CO., APPELLANT.

(No. 22137—Decided April 2, 1951.)

*Messrs. Sindell & Sindell* and *Messrs. Hyre & Stevens,* for appellees.

*Messrs. Squire, Sanders & Dempsey* and *Mr. L. L. Towell,* for appellant.

CARPENTER, J.   In this action the plaintiff Jane Skapura and her insurer recovered a judgment in the Municipal Court of Cleveland against the defendant, The Cleveland Electric Illuminating Company, for damages to her automobile sustained when an automobile owned by the defendant and driven by one of

its employees collided with plaintiff's car while it was stopped at an intersection and waiting for a green light.

From that judgment, the defendant took this appeal on questions of law.

At the close of all the evidence, the defendant moved for a directed verdict and judgment. That motion was overruled, as was one for judgment notwithstanding the verdict. The overrulings of these motions are assigned as errors.

The material facts are undisputed, and as was said in *Bauman* v. *Sincavich,* 137 Ohio St., 21, 27 N. E. (2d), 772, "the principle of law here involved is well settled and is not disputed by counsel."

The question there was the same as here and is stated:

"Specifically, is there evidence tending to prove that at the time of the collision the driver of the defendant's delivery truck [here automobile] was acting within the scope of his employment?"

That was the only fact question on liability submitted to the jury. The answer to that question will have to be found in an extended set of facts as shown by the evidence.

The defendant is a public utility which generates and distributes electricity in the metropolitan area of Cleveland. The meters of its customers, of which there are approximately 372,000 in that area, are read every month. To do this, it employs 63 meter readers. The area is divided into 1,047 separately numbered areas or reading routes for each of which there is a book. Included in each book is a street map of the area and the addresses of all the meters in it.

At the company office each day there is prepared a schedule covering the work for the next meter-reading

day, of which there are 21 in a month. That schedule is posted and indicates the number of the reading route assigned to each reader for that day. For the outlying areas and those where meters are so far apart that it is not feasible for the reader to walk, five automobiles (coupes) are maintained by the company.

The defendant has definite rules and a plan of procedure for its readers to follow. Pursuant to these rules, each morning when meters are to be read, the readers assemble at the office and the posted schedule tells each one the area assigned to him. He then gets his book for that area and, unless it is a remote area to which an automobile has been assigned or one nearby a remote one, the reader of which is assigned to ride with the one assigned to drive an automobile, they proceed at once by the most direct public transportation to their respective areas. (For the expense of transportation, they are reimbursed by the company.)

The five assigned to drive automobiles and the five to ride with them are taken to the company garage, where each driver gets the automobile assigned to him, and they proceed by the most direct route to their respective areas.

On the morning of the collision, April 28, 1949, reader Arthur Schieman was assigned to an area in the village of Eastlake, east of Cleveland, in Lake county, and to which an automobile was assigned. Another reader, Erdman, was assigned to ride with him. The Eastlake area was just off from Lake Shore boulevard, a direct highway from near the garage to the area.

Instead of following that direct route, Schieman digressed from it to East 12th street and Euclid avenue, where he picked up two other readers, and then out the Lake Shore boulevard to a restaurant at

East 185th street, where they stopped for breakfast and picked up a fifth reader and went south on 185th to Euclid avenue, over two miles, to the area of one of the five, then east on Euclid avenue to East 222nd street, the area of another, and north on that street to St. Clair avenue where the third man was left, then on north to Tracy avenue where the collision occurred, which was some distance south of Lake Shore boulevard, his direct route to his assigned area and that of the reader who was assigned to ride with him.

That the collision and resulting damage were caused by the negligence of Schieman is not disputed. He testified that he knew the company rules and that he was supposed to travel by the boulevard and not to carry any one other than the reader assigned to ride with him. A few days later, for this violation of rules, he was discharged from company service.

In 1913, when the automobile was a new vehicle on our highways, the Supreme Court, in the first paragraph of the syllabus of *White Oak Coal Co.* v. *Rivoux, Admr.*, 88 Ohio St., 18, 102 N. E., 302, 46 L. R. A. (N. S.), 1091, laid down the general principle that has ruled cases like this, as follows:

"The owner of an automobile is not liable in an action for damages for injuries to or death of a third person caused by the negligence of an employee in the operation of the automobile, unless it is proven that the employee, at the time, was engaged upon his employer's business, and acting within the scope of his employment."

In *Bauman* v. *Sincavich, supra*, an employee on a delivery route for the employer digressed to accommodate friends without the consent of the employer. As in this case, the trial court submitted the employment

question, and a verdict for plaintiff was returned. That judgment was reversed and final judgment was entered for defendant. In that case it was urged that some remote benefit resulted to the employer by the digression to accommodate the friends of the employee.

So in the case at bar, it is now contended that it was not a digression in that Schieman's area could be reached by going out Euclid avenue. Whether it could or not is immaterial; he did not stay on that street. When the accident happened he was returning to the prescribed route, the boulevard.

The main contention of plaintiff is that the digression was in furtherance of the defendant's business in transporting three of its readers to their reading routes. The evidence does not show how it benefited the employer, either by saving time for its employees or money for their transportation. The inference seems obvious that it was for the accommodation of the friends of Schieman, and perhaps for some social pleasures that were theirs in having breakfast together and the ride.

It is not contended that the conduct of Schieman was not in violation of company rules. With a business as large and intricate as that of the defendant, even in the process of the reading of meters by 63 readers, it is obvious that reasonable rules are necessary.

Employee Schieman, at the time and place of the collision, was not "operating the automobile on the defendant's business, and was not acting within the scope of his employment."

For these reasons, the motion for a directed verdict made at the close of the evidence should have been granted; and, that not having been done, the motion for judgment notwithstanding the verdict should have been sustained. For these errors, the judgment is

reversed and final judgment entered for the defendant.

*Judgment reversed.*

FESS and CONN, JJ., concur.

CONN, CARPENTER and FESS, JJ., of the Sixth Appellate District, sitting by designation in the Eighth Appellate District.