SMITH, ADMX., APPELLEE, *v.* SPRIGGS, APPELLANT.

(No. 617—Decided May 26, 1954.)

*Mr. Emory Smith* and *Mr. Ernest G. Littleton,* for appellee.

*Messrs. Blair & Watkins* and *Messrs. Kimble, Schapiro, Stevens & Harsha,* for appellant.

COLLIER, J. The plaintiff, in the Common Pleas Court of Scioto County, Ohio, sued the defendants, Earl Spriggs and Berkley A. Reed, seeking redress for the wrongful death of her decedent, Warren Everett Smith. The trial resulted in a verdict against both defendants for the sum of $20,000, upon which judgment was rendered on the 9th day of May, 1953. From that judgment the defendant Spriggs appeals to this court on questions of law.

The evidence discloses the following facts: On February 26, 1950, the defendant Reed was operating a tractor and trailer outfit in a southerly direction on U. S. route No. 23, approximately five miles south of Chillicothe, Ohio. Plaintiff's decedent, Warren Everett Smith, was driving an automobile in a northerly direction on route No. 23 at the same time. A collision occurred between the two vehicles and plaintiff's decedent was killed.

The Reinhardt Transfer Company was the owner and holder of certain P. U. C. O. and I. C. C. permits. These permits extended upon a regular route from Bluefield, West Virginia, to Chicago, through the city of Portsmouth. The route from Portsmouth to Chicago, approved by the I. C. C. permit, and the only one over which traffic of the Reinhardt Transfer Company from Portsmouth to Chicago was permitted to travel, extended along U. S. route No. 52 to Cincinnati, thence by way of Indianapolis to Chicago.

The defendant Reed was the owner of a tractor, upon the doors of which were painted the P. U. C. O. numbers of the Reinhardt Transfer Company. The defendant Spriggs was the owner of a trailer upon which were painted the I. C. C. numbers of the Reinhardt Transfer Company. The defendant Spriggs was authorized by the Reinhardt Transfer Company

to transport to Chicago a certain load of steel, originating at the Detroit Steel Company in Portsmouth, Ohio. This load of steel was to be delivered to Chicago. The defendant Spriggs arranged a contract between Reed and the Reinhardt Transfer Company to haul the load of steel on the Reinhardt Transfer Company permits and loaded on the trailer of the defendant Spriggs. Reed was instructed to use the approved and authorized route above described. A portion of the gross proceeds was to be paid to Spriggs and a portion of that was to be paid to Reed for his services and the use of his tractor.

Reed was specifically instructed to call at the office of the Reinhardt Transfer Company in Chicago to ascertain whether there was a further load for him to haul for Reinhardt. Reed was specifically instructed also to return to Portsmouth, using the approved route through Indianapolis and Cincinnati to Portsmouth, and to do so immediately. He was not authorized to enter into any arrangements except with the approval of the Reinhardt Transfer Company.

Reed delivered his load to Chicago, called the Reinhardt Transfer Company there and found there was no further load for him to haul for Reinhardt at that time. He did not return to Portsmouth immediately, but remained in Chicago for approximately 48 hours.

In conversation with other drivers, Reed learned that the Ready Trucking Company had a load of steel to haul from Chicago to Dayton, Ohio. He entered into a written contract with the Ready Trucking Company without the knowledge, consent or approval of Spriggs and hauled this load from Chicago to Dayton under the I. C. C. and P. U. C. O. permits of the Ready Trucking Company. The permit numbers of the Ready Trucking Company were attached or past-

ed over the Reinhardt Transfer Company's permit numbers on the tractor and trailer and remained on said tractor and trailer from the time Reed left Chicago until the collision occurred.

Reed was paid by the Ready Trucking Company for hauling this load to Dayton and Spriggs received no part of the profits. Spriggs had no knowledge of the contract between Reed and the Ready Trucking Company or that Reed had hauled the load from Chicago to Dayton until he was informed by the Highway Patrol that his trailer had been involved in an accident on route No. 23 near Chillicothe.

Reed left Chicago with the Ready Trucking Company load for Dayton on Saturday morning, February 25. After unloading the steel in Dayton he proceeded, over U. S. route No. 35, to Chillicothe and started south on route No. 23, where the accident occurred on Sunday morning, February 26.

The appellant, Spriggs, sets forth 14 assignments of error. However, as we view the record, we consider it necessary to examine only one important question, and that is whether the evidence is sufficient to establish the fact that Reed was acting as agent for Spriggs in the scope of his employment at the time the collision occurred. If not, then the trial court erred in overruling Spriggs' motions for a directed verdict which were timely interposed.

Whatever the relationship between Reed and Spriggs may have been, we are assuming agency in their joint enterprise during the time required to complete the project undertaken by them to haul the load of steel from Portsmouth to Chicago over the authorized route, to unload the same and return the tractor-trailer outfit to Portsmouth, Ohio, in accordance with instructions. The question presented is whether

Reed's deviation and departure from the route he was directed to follow is sufficient to remove him from his scope of employment and thus render Spriggs free from liability for Reed's wrongful acts or negligence while so engaged on his own mission.

Plaintiff-appellee contends that Spriggs is liable in damages by reason of the single fact that he was engaged in the business of transportation by motor truck under federal and state permits; that public policy requires protection of third persons from injuries caused by the negligence of the drivers of such motor vehicles, without limitation, and regardless of the relationship of the parties carrying on such business. The case of *Duncan* v. *Evans,* 134 Ohio St., 486, 17 N. E. (2d), 913, is cited as authority for this contention. With this claim we are unable to agree. The *Duncan case* is easily distinguished from the instant case. The question of "deviation" is not involved in the *Duncan case,* which simply holds that a common carrier may not escape liability by delegating its duties to an independent contractor. Had the collision occurred while Reed was carrying out his orders in the completion of the task assigned to him, we would be confronted with an entirely different situation. To sustain appellee's contention would do violence to the well-established principles of the law of agency.

The test of liability upon the part of the principal or master has been so generally recognized and applied by the courts that it would be futile to refer to the many authorities covering this phase of the law of negligence. Beginning with the case of the *Lima Ry. Co.* v. *Little,* 67 Ohio St., 91, 65 N. E., 861, it has been held as announced in paragraph two of the syllabus of that case as follows:

"The test of a master's liability is not whether a

given act was done during the existence of the servant's employment, but whether such action was done by the servant while engaged in the service of, and while acting for the master, in the prosecution of the master's business."

The Supreme Court of Ohio has repeatedly followed the law announced in that case, the latest pronouncement being in *Gulla* v. *Straus,* 154 Ohio St., 193, 93 N. E. (2d), 662, where it is held:

"The owner of an automobile cannot be held liable under the doctrine of respondeat superior in an action for damages for injuries to a third person caused by the negligence of an employee of such owner in the operation of the automobile, unless it is proven that the employee, at the time, was engaged in his employer's business and acting within the scope of his employment."

See, also, *White Oak Coal Co.* v. *Revoux, Admx.,* 88 Ohio St., 18, 102 N. E., 302; *Braun* v. *Averdick,* 113 Ohio St., 613, 150 N. E., 41; *Bauman* v. *Sincavich,* 137 Ohio St., 21, 27 N. E. (2d), 772; *Jackson* v. *Frederick,* 152 Ohio St., 423, 89 N. E. (2d), 645; *Jakubek* v. *Coca-Cola Bottling Co.,* 72 Ohio App., 42, 50 N. E. (2d), 678; *Skapura* v. *Cleveland Electric Illuminating Co.,* 89 Ohio App., 403, 60 Ohio Law Abs., 197; *Jones* v. *Kay,* 63 Ohio Law Abs., 481, 110 N. E. (2d), 33; *Levis* v. *McGerty,* 8 Ohio Law Abs., 281.

The *Levis case, supra,* is a Lawrence County case. The opinion by the late Judge Mauck holds:

"Owner not liable for negligence of driver of truck unless driver was, at time of collision, agent or owner and operating truck in scope of employment."

The case of *Bauman* v. *Sincavich,* above cited, is, in our opinion, decisive of the instant case. In that case, as in the case at bar, the plaintiff contended that,

even if the driver had departed from his employer's business, he was in the process of returning to the duties of his master. In the opinion, on page 23, the court disposes of this contention as follows:

"However, the manifest difficulty with this view of the matter is that at the time of the collision the driver still was almost two miles from the point of departure and had in no sense re-engaged in discharging his duties for his employer."

In none of the above cited cases showing deviation has the departure of the employee from the regular course been as great as in the instant case. Reed was at least 20 miles from any point of the route he was directed to follow when the collision occurred. The record, considered in the light of these decisions, is absolutely devoid of any evidence to establish the fact that Reed was acting in the scope of his employment when the collision occurred.

Reasonable minds cannot reasonably conclude that Reed's trip from Chicago to Dayton, thence by way of Chillicothe to Portsmouth, was under the direction or at the instance of Spriggs and for his benefit. It was undertaken by Reed and for his sole benefit. Under these circumstances, Spriggs owed no duty to third persons for the wrongful acts of Reed at the time and place of the collision and therefore the motion for a directed verdict made by Spriggs at the close of the evidence should have been granted. It is not necessary to consider the other assignments of error. The judgment is reversed and final judgment is entered for the defendant-appellant.

*Judgment reversed.*

GILLEN, P. J., and McCURDY, J., concur.