### Sudman v. Cleveland Electric Illuminating Co.

*[Cite as 8 AOA 416]*

Case No. 57586, 57587
Cuyahoga County, (8th)
Decided November 29, 1990

*Stephen P. Kolozvary, 5626 Broadview Road, Cleveland, Ohio 44134, for Plaintiffs-Appellees, Edward Sanders and Willie May, Sanders & Nationwide Ins. Co.*

*Damond R. Mace, Squire, Sanderes & Dempsey, 1800 Huntington Building, Cleveland, Ohio 44115, for Defendant-Appellant, Cleveland Elec. Illum. Co.*

*Jerry Gluck, 1310 Standard Building, Cleveland, Ohio 44113, for Plaintiffs-Appellees, Morris Sudman, MIC General Ins. Co., Wausau Ins. Co. & Wausau Underwriters Co.*

*David R. Percio, Senior Corporate Attorney, Cleveland Elec. Illum. Co., P.O. Box. 5000, Cleveland, Ohio 44101, of Counsel.*

*George Mineff, Jr., 736 Standard Building, Cleveland, Ohio 44113, for Defendant-Appellee, Douglas Wilson.*

J.F. CORRIGAN, J.

In these consolidated appeals, The Cleveland Electric Illuminating Co. (hereafter referred to as "CEI") appeals from the judgment of the trial court which determined that former CEI employee Douglas Wilson was in the course and scope of his employment when he caused two separate motor vehicle accidents. For the reasons set forth below, we affirm in part, and reverse in part.

I.

On January 2, 1987, Douglas Wilson caused two separate motor vehicle accidents while driving a CEI van. The occupant of the first vehicle, Morris Sudman, and his insurers, MIC Ins. Co. and Wausau Underwriters Ins. Co., subsequently brought suit against Wilson and CEI, contending that Wilson caused the collision within the course and scope of his employment. The occupants of the second vehicle, Edward and Willie Mae Sanders, and their insurer, Nationwide Ins. Co., likewise brought suit against Wilson and CEI, alleging that Wilson caused the collision with their vehicle while in the course and scope of his employment. The actions were subsequently consolidated by the trial court.

CEI denied that it was vicariously liable and moved for summary judgment. The trial court denied the motion and the matter proceeded to trial on October 14, 1988.

Trial commenced with stipulations as to the following matters:

"[T]hat there were two automobile accidents involved, both of which occurred on January 2, 1987.

"The first automobile accident occurred at 2:00 p.m. in the afternoon, the second at approximately 2:15 p.m. of that same afternoon.

"It is stipulated by the parties that defendant, Douglas Wilson, admits negligence as to plaintiff, Morris Sudman, MIC General Insurance Corporation, Wausau Underwriters Insurance Company, Edward and Willie Mae Sanders, and Nationwide Insurance Company.

"It is further stipulated by the parties that CEI owned the truck Douglas Wilson was driving on January 2, 1987.

"It is also stipulated that on January 2, 1987, Douglas Wilson was an employee of the CEI Company on the morning of January 2, 1987." (Tr. 13.)

Thereafter, the attorneys for the plaintiffs called Wilson upon cross-examination (Tr. 32) and established that Wilson was a grade one installer for CEI at the time of the collisions. (Tr. 35.) Wilson stated that he was on the 7:00 a.m. to 4:00 p.m. work shift on January 2, 1987 and determined his assignments for that day upon arriving to work. (Tr. 37-38.) His first job was to install temporary service at a construction site. (Tr. 38), and after completing that assignment, he was assigned to "storm duty," i.e., responding to consumer service problems. (Tr. 38.) According to Wilson, he completed his first storm duty assignment at 10:00 a.m. or 10:30 a.m. (Tr. 44), and completed his second assignment, on North Hampton in Cleveland Heights, at around noon. (Tr. 44.) Wilson then completed a third assignment, on Lee Road, at approximately 12:15 p.m. (Tr. 45.) Wilson next recalled being given an assignment in Eastlake, but had no further recollection of his activities after leaving the Lee Road assignment. (Tr. 45.)

Wilson further established that CEI required its installers to log the time spent at each assignment on time sheets. (Tr. 39.) In addition, he stated that he was permitted to take a half hour lunch break at any time be-

tween 11:30 a.m. and 1:30 p.m. (Tr. 39) and was not required to obtain prior approval before commencing this break. (Tr. 39.) In this connection, Wilson stated that while a half hour is reported on the time sheet, "normally your lunch may run forty-five minutes." (Tr. 40.) Wilson denied being reprimanded for taking too much time off at lunch, however, "simply because it is not really known what happens. We keep our own time sheets." (Tr. 46.)

On cross-examination by CEI, Wilson admitted that before proceeding to the North Hampton call, he had departed from his duties with CEI for approximately thirty minutes. (Tr. 59.) Wilson admitted that he had consumed vodka at this time, and further admitted that in a previous deposition he had estimated the amount of vodka he had consumed as a "glassful, maybe a water glass" of vodka. (Tr. 60.) Wilson further admitted that he falsified his time sheet with respect to the Lee Road call and reported that he had performed work which he had not actually performed. (Tr. 63.) Wilson conceded that he also stopped at a liquor store near Lee and Meadowbrook (Tr. 75) and that he was not certain where he was going at the time of the collisions. (Tr. 72.) He further stated that to get to his Eastlake assignment, he probably would have driven from Lee Road, to Euclid Avenue, to the freeway. (Tr. 68.) He admitted, however, that the second accident occurred while he was turning south off of Euclid Avenue, i.e., in the opposite direction of the Eastlake assignment, and on to Torbenson Road, the street where he had spent the previous night. (Tr. 68-69, 59.) Finally, Wilson admitted that CEI prohibits drinking during working hours. (Tr. 54.) The plaintiffs then rested.

CEI moved for a directed verdict with respect to both collisions, arguing that Wilson was not acting within his employment with CEI, because Wilson completed the Lee Road assignment two hours before the collisions occurred, and because CEI prohibits drinking during work. In addition, CEI contended that Wilson was outside the scope of his employment with respect to both collisions because at the time he struck Sudman, he was not on "the direct route" to the Eastlake assignment, and at the time he struck Sanders he was travelling away from the direction of the Eastlake assignment. The trial court denied the motion, and CEI proceeded with its defense.

James Barclay, service supervisor for CEI at the time of the collisions, testified that Wilson had no job assignments in the vicinity of the collisions (Tr. 118), and that CEI recovered its van on Torbenson Road. (Tr. 119.) Barclay further testified that employees are not permitted to make personal stops (Tr. 110), and are to take the most direct route to service calls. (Tr. 110.) He admitted, however, that whether a route is direct is a subjective determination and that an employee's failure to take any particular route would not result in dismissal. (Tr. 124-125.) Finally, Barclay established that Wilson was paid only until 11:30 a.m. for his work on January 2, 1987, as CEI determined that Wilson had ceased performance of his duties for CEI at this time. (Tr. 114.)

CEI then rested without renewing its motion for a directed verdict as to the Sudman and Sanders collisions (Tr. 155-157), and the matter was submitted to the jury. The jury returned verdicts in favor of both groups of plaintiffs. In special interrogatories, the jury further found that Wilson was *en route* to the Eastlake assignment at the time he caused both collisions, and that Wilson was not intoxicated. CEI subsequently moved for judgment notwithstanding the verdicts. The trial court denied the motion, and these appeals were commenced.

II.

"THE TRIAL COURT ERRED IN DENYING THE ILLUMINATING COMPANY'S MOTION FOR SUMMARY JUDGMENT IN THE SANDERS CASE BECAUSE DOUGLAS WILSON WAS NEITHER ON THE DIRECT ROUTE TO HIS JOB ASSIGNMENT NOR EVEN HEADED FOR HIS JOB ASSIGNMENT AT THE TIME OF THE SANDERS ACCIDENT.

"THE TRIAL COURT ERRED IN DENYING THE ILLUMINATING COMPANY'S MOTION FOR SUMMARY JUDGMENT IN THE SUDMAN CASE BECAUSE PLAINTIFFS DID NOT SUBMIT SUFFICIENT EVIDENCE THAT DOUGLAS WILSON WAS ON THE DIRECT ROUTE TO HIS JOB ASSIGNMENT OR EVEN HEADED FOR HIS JOB ASSIGNMENT AT THE TIME OF THE SUDMAN ACCIDENT."

As set forth in *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, summary judgment may not be granted unless it is determined that:

"(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

The burden of establishing the foregoing is upon the movant. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66.

With respect to the substantive law, regarding an employer's liability for those acts of his employee, it is well-settled that vicarious liability may be imposed only for those acts which are performed in the course and scope of the employment. *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 278; *Rogers v. Allis-Chalmers Mfg. Co.* (1950), 153 Ohio St. 513, 526; *Calhoun v. Middletown Coca-Cola Bottling* (1974), 43 Ohio App. 2d 10, 13. Thus, an employer is not liable for those acts which have no relationship to the conduct of the employer's business. *Thornberry v. Oyler Bros. Inc.* (1955), 164 Ohio St. 395, paragraph two of the syllabus; *Thomas v. Ohio Dept. of Rehab. & Corr.* (1988), 48 Ohio App. 3d 86, 89. The master-servant relationship may be suspended, then later re-established, however. *Loughead Co. v. Hollenkamp* (1924), 3 Ohio Law Abs. 558, 559.

Further, where an employee injures a third party while operating his employer's vehicle with the authority of his employer, a rebuttable presumption that the person operating the vehicle was acting in the course and scope of his employment is established. *White Coal Co. v. Rivoux* (1913), 88 Ohio St. 18, 26-27; *Cincinnati Transit, Inc. v. Tapley* (1971), 28 Ohio App. 2d 26, 27.

In furtherance of its motion for summary judgment, CEI asserted that Wilson was not in the course and scope of his employment with respect to either collision because the evidence established that Wilson completed the Lee Road assignment two hours before the collisions occurred, and because the locations of the collisions, which CEI established as merely "the intersection of Green and North Green" (Wilson Depo. at 27) and "the intersection of Euclid and Torbenson" (Wilson Depo. at 28) were not direct routes to the Eastlake assignment.

The time lapse between assignments does not conclusively negate existence of the master-servant relationship, however, as it does not preclude a genuine issue as to whether Wilson had temporarily suspended his job duties but resumed them again at the time of the collision. Cf. *Loughead Co. v. Hollenkamp, supra.* Moreover, the evidence adduced clearly established that Wilson caused the collisions during working hours and while driving a CEI van, and this gives rise to the rebuttable presumption that he was acting within the course and scope of his employment. Further, CEI's evidence as to the location of the accidents, i.e., the intersections of Green and North Green and Euclid and Torbenson, was too general to negate this presumption with respect to either collision, as Wilson's direction of travel in each instance was not conclusively established. Finally, CEI's evidence concerning Wilson's failure to use the most direct route to the Eastlake assignment was also insufficient to negate the presumption, as CEI proffered no evidence that Wilson was on a proscribed route, or that this would sever the master-servant relationship. Cf. *Skapura v. Cleveland Electric Illuminating Co.* (1951), 89 Ohio App. 403 (employee's deviation from his most direct route of travel to pick up co-workers and have breakfast then drop off co-workers at their work assignments rendered employee's conduct outside of employee's course and scope of employment).

In accordance with the foregoing, we hold that CEI failed to establish that it was entitled to summary judgment with respect to either collision, and we reject CEI's first and second assignments of error.

### III.

"THE TRIAL COURT ERRED IN DENYING CEI'S MOTION FOR A DIRECTED VERDICT IN THE SUDMAN CASE BECAUSE PLAINTIFFS DID NOT PRESENT SUFFICIENT EVIDENCE THAT DOUGLAS WILSON WAS ON THE DIRECT ROUTE TO HIS JOB ASSIGNMENT OR EVEN HEADED TO HIS JOB ASSIGNMENT AT THE TIME OF THE SUDMAN ACCIDENT.

"THE TRIAL COURT ERRED IN DENY-ING THE ILLUMINATING COMPANY'S MOTION FOR A DIRECTED VERDICT IN THE SANDERS CASE BECAUSE PLAIN-TIFFS DID NOT PRESENT SUFFICIENT EVIDENCE THAT DOUGLAS WILSON WAS ON THE DIRECT ROUTE TO HIS JOB ASSIGNMENT OR EVEN HEADED TO HIS JOB ASSIGNMENT AT THE TIME OF THE SANDERS ACCIDENT."

The record discloses that following the trial court's denial of its motion for directed verdicts as to these claims, CEI presented a defense, and did not renew the motion at the close of all of the evidence. (Tr. 155-157.) Thus, any error resulting from the trial court's denial of this motion has been waived. See *Helmick v. Republican-Franklin Ins. Co.* (1988), 39 Ohio St. 3d 71, paragraph one of the syllabus. Accordingly, we overrule these assignments of error.

IV.

"THE TRIAL COURT ERRED IN DENY-ING CEI'S MOTIONS FOR JUDGMENT NOTWITHSTANDING THE VERDICT BE-CAUSE PLAINTIFFS DID NOT PRESENT SUFFICIENT EVIDENCE THAT DOUG-LAS WILSON WAS IN THE COURSE AND SCOPE OF HIS EMPLOYMENT AT THE TIME OF THE ACCIDENTS."

In support of this assignment of error, CEI posits that the trial court erred in deny-ing its motion for judgment notwithstanding the verdict because the verdicts are not sup-ported by sufficient evidence.

As set forth in *Posin v. A.B.C. Motor Court Hotel, supra:*

"The test to be applied by a trial court in ruling on a motion for judgment notwith-standing the verdict is the same test to be ap-plied on a motion for a directed verdict. The evidence adduced at trial and the facts es-tablished by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the mo-tion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Nei-ther the weight of the evidence nor the credi-bility of the witnesses is for the court's deter-mination in ruling upon either of the above motions. *McNees v. Cincinnati Street Ry. Co.* (1949), 152 Ohio St. 269; *Ayers v. Woodard*

(1957), 166 Ohio St. 138; Civ. R. 50(A) and (B)."

Accord *Osler v. Lorain* (1986), 28 Ohio St. 3d 345, syllabus. A motion for a directed verdict does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consid-er the evidence. *O'Day v. Webb* (1972), 29 Ohio St. 2d 215, paragraph three of the sylla-bus.

A. *The Sudman Collision*

Applying the foregoing to the Sudman verdict, we hold that the trial court properly denied CEI's motion for judgment notwith-standing the verdict. First, it is undisputed that Wilson caused this collision during his work shift and while driving a CEI van. Thus, these plaintiffs were entitled to a rebuttable presumption that the collision was caused in the course and scope of Wilson's employment. *White Oak Coal Co. v. Rivoux, supra.* Further, construing the remaining evi-dence in favor of the plaintiffs, as required by Civ. R. 50(B), we cannot conclude that this presumption was rebutted, as the two-hour interval between the Lee Road assignment and the collision does not conclusively estab-lish that the master-servant relationship was severed. Similarly, the fact that the collision occurred on other than the most direct route toward the Eastlake assignment does not conclusively sever the relationship as James Barclay stated that this determination was subjective, and failure to take any particular route would not result in termination. Final-ly, it was not demonstrated that Wilson was travelling contrary to the direction of the Eastlake assignment when he struck Sudman. Thus, reasonable minds could conclude that Wilson was in fact *en route* to the Eastlake assignment when the first collision occurred, and therefore was in the course and scope of his employment.

B. *Sanders Collision*

Applying the standard for evaluating a motion for judgment notwithstanding the ver-dict to the Sanders verdict, we hold that the trial court erred in failing to grant CEI judg-ment notwithstanding the verdict. While the Sanders plaintiffs were initially afforded the rebuttable presumption that Wilson was in the course and scope of his employment when he caused this collision, the undisputed evi-dence established that Wilson was travelling in the opposite direction of his Eastlake

assignment, i.e., turning off of Euclid Avenue and onto Torbenson Road, when he struck the Sanders' vehicle. Construing this evidence in favor of the plaintiffs, reasonable minds could not conclude that Wilson was proceeding to the Eastlake assignment, and could therefore not conclude that Wilson was in the scope of his employment. Accordingly, the trial court committed reversible error in denying the motion for judgment notwithstanding the verdict as to the Sanders collision. Cf. *Sullivan v. Mack* (Jan. 24, 1985), Summit App. No. 11587, unreported.

In accordance with the foregoing, CEI's fifth assignment of error is overruled as to the Sudman action (Case No. 57586), and is sustained as to the Sanders action (Case No. 57587).

## V.
"THE TRIAL COURT ERRED IN DENYING CEI'S MOTIONS FOR DIRECTED VERDICTS AND IN DENYING CEI'S MOTIONS FOR JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE THE EVIDENCE CLEARLY SHOWED THAT DOUGLAS WILSON WAS SO INTOXICATED HE COULD NO LONGER ENGAGE IN HIS JOB DUTIES AT THE TIME OF THE ACCIDENTS."

Within this assignment of error, CEI relies upon *Phelps v. Action Tool Co.* (1986), 26 Ohio St. 3d 142, for the proposition that an employee abandons his job and is outside the scope of his employment where he is so intoxicated that he cannot perform his job duties. Assuming without deciding that *Phelps v. Action Tool Co., supra,* is applicable to determining the existence of the master-servant relationship, we reject this assignment of error. For while Wilson admitted to consuming vodka, and had no recollection of the incidents, this evidence, when construed most strongly in favor of the plaintiff, does not establish as a matter of law that Wilson was so intoxicated that he was incapable of performing his work. Indeed the record demonstrated that Wilson consumed vodka before he performed the North Hampton assignment. Cf. *Phelps v. Action Tool Co., supra* (evidence that workers' compensation claimant consumed alcohol from 7:00 p.m. to 12:00 a.m., had a blood alcohol level of .21%, apparently made no attempt to apply brakes before collision, could not recall how collision occurred, and admitted that he fell asleep at the wheel,

militated the conclusion that claimant had abandoned his employment and exposed himself to a danger of his own creation).

Accordingly, we cannot conclude that the trial court erred in denying CEI's motion for judgment notwithstanding the verdict by application of *Phelps*.

## VI.
"THE FAILURE TO GIVE CEI'S REQUESTED JURY INSTRUCTION DEALING WITH THE DIRECT ROUTE TO DOUGLAS WILSON'S JOB ASSIGNMENT WAS ERROR THAT MATERIALLY PREJUDICED CEI.

"THE FAILURE TO GIVE CEI'S REQUESTED JURY INSTRUCTION DEALING WITH INTOXICATION WAS ERROR THAT MATERIALLY PREJUDICED CEI."

. As set forth in *Pickering v. Cirell* (1955), 163 Ohio St. 1, 4:

"Instructions to a jury should bring into view the issues in a case and show how the jury should apply the evidence in the various aspects developed at the trial and should state clearly and concisely the issues of fact and the principles of law necessary to enable it to accomplish the purpose desired. 39 Ohio Jurisprudence, 893, Section 232.

"'A requested instruction must be calculated to give the jury an accurate understanding of the law, having reference to the phase of the case to which it is applicable. It is, of course, not incumbent upon the trial court to give any requested instruction which is an erroneous statement of the law or is otherwise improper under the facts of the case. The trial court may properly refuse a requested charge which is unintelligible, incomplete, or argumentative, or which might prove misleading or confusing to the jury ***.' 53 American Jurisprudence, 422, Section 525." Accord *Cleveland Electric Illuminating Co. v. Astorhurst Land Co.* (1985), 18 Ohio St. 3d 268, 277.

Within the first of these related assignments of error, CEI pits that in accordance with *Skapura v. Cleveland Electric Illuminating Co., supra,* the jury should have been instructed that if Wilson deviated from the direct route to his next job assignment, even if he was proceeding to that assignment at the time of the collisions, then he was outside the scope of his employment. We do not find this proposition to be contained within

*Skapura,* however. Rather, a fair reading of *Skapura* is that the master-servant relationship is severed where the employee deviates from the direct route, picks up fellow employees for breakfast, then delivers his fellow employees to their work assignments. Thus, because the proffered instruction was erroneous, we find the court's refusal to give it to be proper.

CEI next asserts that pursuant to *Phelps v. Positive Action Tool Co., supra,* the jury should have been instructed that if Wilson had consumed liquor to such an extent that he could no longer engage in his job duties at the time of the collisions, he had abandoned his employment and was outside its scope. Again assuming without deciding that *Phelps* is relevant to determining the existence of a master-servant relationship, we find no prejudicial error from the trial court's refusal to render this instruction as the jury specifically concluded that Wilson was not intoxicated. See Special Interrogatory No. 1.

In accordance with the foregoing, CEI's seventh and eighth assignments of error are overruled.

## VII.

"THE EXCLUDING OF TESTIMONY REGARDING DEFENDANT WILSON'S SELF-ADMISSION TO GLENBEIGH HOSPITAL FOR ALCOHOL TREATMENT WITHIN HOURS AFTER THE ACCIDENTS WAS ERROR THAT MATERIALLY PREJUDICED CEI."

The record reveals the following questioning of Wilson by counsel for CEI:

"Q. And you admitted yourself to Glenbeigh Hospital that night?

"A. Yes, later that evening."

The record further reveals that while this question was subsequently objected to and the objection was sustained, the jury was not instructed to disregard Wilson's response to the question. (Tr. 79-82.) Thus, we overrule this assignment of error.

## VIII.

"THE TRIAL COURT ERRED BY ORALLY AGREEING DURING PLAINTIFF'S CLOSING ARGUMENT THAT MAPS CAN BE CONFUSING."

Following the court's remark regarding its own confusion with maps, the jury was given a cautionary instruction which advised them that the remark was irrelevant and that they were to consider only the evidence presented in determining the matter. (Tr. 187-188.) Thus, we overrule this assignment of error.

## IX.

"AT THE TRIAL ON LIABILITY THE TRIAL COURT ERRED IN PERMITTING PLAINTIFFS' COUNSEL TO QUESTION DOUGLAS WILSON WITH LEADING QUESTIONS (AS IF ON CROSS EXAMINATION) AFTER WILSON HAD ADMITTED LIABILITY TO PLAINTIFFS AND WAS NO LONGER ADVERSE TO THEM."

The use of leading questions is governed by Evid. R. 611(C), which provides:

"(C) Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. *When a party calls* a hostile witness, *an adverse party,* or a witness identified with an adverse party, interrogation may be by leading questions." (Emphasis added.)

In this case, Wilson was a party defendant and was therefore an adverse party in relation to plaintiffs. Accordingly, the trial court properly permitted plaintiffs to elicit testimony from Wilson through leading questions.

## X.

"THERE WERE IRREGULARITIES AND/OR MISCONDUCT BY THE JURY."

As CEI has failed to articulate the nature of the alleged irregularities and/or misconduct, and has presented no evidence *aliunde* that irregularities or misconduct occurred, we reject this assignment of error. App. R. 12(A); Evid. R. 606(B); *State v. Adams* (1943), 141 Ohio St. 423; *Diehl v. Wilmont Castle Co.* (1971), 26 Ohio St. 2d 249.

For the foregoing reasons, we affirm the judgment of the trial court with respect to the Sudman action (Case No. 57586), and we reverse the judgment of the trial court as to the Sanders action (Case No. 57587).

Motion No. 94880 by CEI to strike Wilson's brief for want of standing is denied.

SWEENEY, P.J., concurs.

PRYATEL, J., concurs in part and dissents in part.

Judge August Pryatel, Retired, of the Eighth District Court of Appeals, sitting by assign-

ment, Concurs as to Sanders collision (No. 57587) and Dissents as to Sudman (No. 57586).