OPINION
{¶ 1} This is an appeal from a summary judgment for an insurer on a claim for uninsured/underinsured ("UM/UIM") motorist coverage.
{¶ 2} Plaintiff-Appellant, Mary Ann Minton, is the surviving spouse and executor of the Estate of Jeffrey Minton, who died as a result of injuries he suffered in an automobile collision that occurred on March 14, 1991. Plaintiff settled with the driver of the other vehicle involved in the collision, the tortfeasor, for the limits of the tortfeasor's liability coverage in 1991.
{¶ 3} Jeffrey Minton was employed by Ferguson Construction Company, Inc. ("Ferguson Construction") as a sales representative on the date the accident occurred. Minton was driving his personal automobile to Ferguson Construction's offices to meet with representatives of a vendor that sold products to Ferguson Construction. Minton's supervisor directed him to attend the meeting.
{¶ 4} Ferguson Construction was insured under a policy of automobile liability insurance issued by Defendant-Appellee Fidelity and Guaranty Insurance Underwriters, Inc. ("Fidelity") when Minton was killed. The policy provided UM/UIM coverage.
{¶ 5} In 2001, following the decision in Scott-Ponzer, Inc. v.Liberty Mutual Fire Ins. Co. (1999), 85 Ohio St.3d 660, Plaintiff notified Fidelity of her claim for UM/UIM coverage arising from her husband's death under the policy Fidelity had issued to Ferguson Construction. Fidelity rejected the claim. Plaintiff then commenced the underlying action for coverage.
{¶ 6} After the holding in Scott-Ponzer was modified byWestfield Insurance Company v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5489, the coverage issue in the action became whether, per Galatis, Minton was acting within the course and scope of his employment when he was killed. Fidelity's policy contained no provision that would deny coverage in that event.
{¶ 7} Fidelity moved for summary judgment on the coverage issue. Plaintiff opposed the motion. The trial court found that, on the record before it, reasonable minds could only conclude that Minton was not acting within the course and scope of his employment when he was killed, and it granted summary judgment for Fidelity. Plaintiff filed a timely notice of appeal.
{¶ 8} ASSIGNMENT OF ERROR
{¶ 9} "The trial court erred in granting judgment as a matter of law to defendant fidelity and guaranty insurance underwriters, inc. and also in thereby implicitly denying plaintiff mary ann minton's motion for summary judgment."
{¶ 10} Summary judgment may only be granted if: (1) No genuine issue of material fact remains to be litigated; (2) The moving party is entitled to judgment as a matter of law; and (3) Reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion of summary judgment is made. Civ.R. 56; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66. All evidence must be construed against the moving party. Ferrando v. Auto-OwnersMut. Ins. Co. (2002), 98 Ohio St.3d 186, 191, 2002-Ohio-7217. We have held that even if the underlying facts are not in dispute, summary judgment may be inappropriate if reasonable inferences from those facts may lead to different conclusions. Hampton v.Trimble (1995), 101 Ohio App.3d 282.
{¶ 11} Two issues are raised on appeal. First, Plaintiff argues that a genuine issue of material fact exists as to whether Minton was acting in the course and scope of his employment at the time of the accident. She points to evidence in the record that he was an outside salesman, but that he was traveling to Ferguson's office that morning to attend a meeting with a vendor, as he had been directed to do by his employer. Fidelity contends that Minton was merely commuting to work, and that his job duties didn't begin until he actually arrived at the office.
{¶ 12} UIM coverage allows an injured person to recover from his or her insurance provider, or his or her employer's insurance provider, for amounts in excess of the tortfeasor's policy limits. While the history of UM/UIM coverage obtained through an employer's insurance policy has been long and arduous, the Ohio Supreme Court resolved many of the questions presented inWestfield Ins. Co. v. Galatis (2003), 100 Ohio St.3d 216,2003-Ohio-5849. The Court held that, unless coverage for injuries off the job is expressly provided by the policy, an employee may be entitled to UM/UIM coverage under a policy issued to his employer only if the employee is injured while acting in the "course and scope" of his employment. Id. at 222.
{¶ 13} The general rule is that an employee is operating in the course and scope of employment when he is performing an obligation of that employment. Industrial Comm. v. Davidson
(1928), 118 Ohio St. 160. For an employee who reports to a fixed location each working day, the general rule, known as the "coming and going rule," is that an employee's commute from home to or from his place of employment is not within the course and scope of his employment. MTD Products, Inc. v. Robatin (1991),61 Ohio St.3d 66, 68. The trial court based its grant of summary judgment on finding that the coming and going rule barred recovery.
{¶ 14} The coming and going rule does not apply when the employee does not necessarily report to a fixed location each day but travels on behalf of his employer to other locations to perform some or all of his duties. For that purpose, employment can be defined in relation to the employee's work location as fixed situs, semi-fixed situs, and non-fixed situs. See Fletcherv. Northwest Mechanical Contractors, Inc. (1991),75 Ohio App.3d 466,472
— 473. That determination depends on the nature of the employment itself. Id. In determining whether an employee is a fixedsitus employee, and therefore within the coming and going rule, the focus is on whether the employee commences his substantial employment duties only after arriving at a specific location designated by his employer. Rackman v. Cubby DrillingInc. (1998), 81 Ohio St.3d 117, paragraph one of the syllabus, 1998-Ohio-455.
{¶ 15} Application of Rackman is highly fact-dependant. Several courts have distinguished commutes for fixed situs employees from semi-fixed situs employees.
{¶ 16} The Cuyahoga Court of Appeals found that an employee's deviation from a direct route to his employer's office in order to pick up co-workers, hold a breakfast meeting to discuss the day's activities, and then drop those co-workers off at various work assignments was not within the course and scope of his employment when the facts indicated that the diversion was for the accommodation of friends and offered only incidental benefits to the employer. Skapura v. Cleveland Electric Illuminating Co.
(1951), 89 Ohio App. 403.
{¶ 17} In contrast, the Hamilton County Court of Appeals held that members of a film crew, who typically worked out of a fixed office and were injured in an auto accident in a company van on the return trip from a work site, were acting within the scope and course of their employment because the travel was necessary to perform their duties as directed by their employer.Midwestern Indemnity Co. v. Video Features, Inc. (November 2, 1994), Hamilton App. No. C-930401.
{¶ 18} We addressed a similar question in a workers compensation context in Hampton v. Trimble (Feb. 22, 1995), Montgomery App. No. 14544. Hampton was employed as a home health care nurse who commuted directly to and from her home to her patients' homes. She slipped on ice in her driveway and broke her ankle after returning home from visiting patients, but prior to calling another patient as she had promised. We reversed the trial court's grant of summary judgment and held that it was a genuine issue of fact whether her employment terminated when she parked her car, or whether it continued due to her remaining obligation to call a patient.
{¶ 19} The trial court found Minton was not acting within the course and scope of his employment, and therefore barred Minton's claim under the coming and going rule. Plaintiff argues that reasonable inferences from the facts on the record could lead to a different conclusion. Hampton, supra. There is testimony from Minton's supervisor that he typically reported to Ferguson Construction's office every morning and spent approximately 90% of his time there. There is also testimony that, as a salesman, Minton had broad discretion over when he needed to be in the office, and that Minton was only coming to Furgeson's offices the morning of his accident to meet not with a sales prospect but with representatives of a vendor. It is undisputed that Minton's employer had directed him to meet with them at the employer's office on that occasion.
{¶ 20} Minton was a semi-fixed situs employee who had general discretion to decide where he would meet his employer's customer. On the day he was killed, and when he was killed, Minton was not traveling to a location he'd chosen, but was traveling from his home to the employer's offices. Therefore, and notwithstanding the fact that Minton might have planned to meet a customer elsewhere, under different circumstances, in this instance he didn't. Further, his employer's direction to be at the office deprived Minton of the discretion he might otherwise have enjoyed and acted upon.
{¶ 21} Plaintiff argues that the very fact that Minton was following his employer's direction to meet the customer at the employer's offices demonstrates that Minton was acting within the course and scope of his employment when he was killed. However, the purpose of his travel to get there was no different from the travel of any fixed-site employee going to work. Minton's job duties didn't commence in that circumstance before he reached the offices of Ferguson Construction.
{¶ 22} The trial court did not err when it granted summary judgment for Fidelity. That finding renders Plaintiff'sFerrando contention moot. The assignment of error is therefore overruled, and the judgment of the trial court will be affirmed.
Brogan, J. and Wolff, J., concur.