OPINION
{¶ 1} Defendant-appellant, Albert E. Lohri, Successor Guardian for the Estate of Beverly A. Trick ("appellant"), appeals from the decision of the Franklin County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, Cincinnati Insurance Company ("appellee").
 {¶ 2} Appellants and appellee filed with the trial court a stipulated statement of material facts. According to the joint stipulation, appellant's Ward, Beverly Trick ("Ms. Trick"), was hired by CareStar, Inc. ("CareStar"), as a skilled nurse to provide care in the Lancaster, Ohio home of Daniel Shaeffer. On February 19, 1991, Ms. Trick was en route in her personal automobile to the Shaeffer home when a negligent uninsured third-party struck her head-on. Ms. Trick suffered severe injuries rendering her comatose.[1] Ms. Trick sustained damages in the amount of $1,485,659 as determined by the Fairfield County Ohio Common Pleas Court Order entered on August 6, 1993.[2]
 {¶ 3} Appellant issued to CareStar policies of insurance, which included endorsements. Specifically at issue here are the Hired and Non-Owned Auto Endorsement, and the Uninsured Motorists Insurance Endorsement. On January 22, 2004, appellee filed a complaint for declaratory judgment against appellant seeking a determination of the parties' rights and obligations regarding the availability of insurance coverage to appellant. Specifically, appellee sought a declaratory judgment holding that appellant is not entitled to uninsured motorists coverage under appellee's policies and that Ms. Trick was not in the course and scope of employment for CareStar at the time of the accident. Appellee moved for summary judgment and the trial court granted appellee's motion finding that Ms. Trick was not within the scope and course of employment at the time of the accident, and, therefore, was not entitled to coverage under appellee's policies. Appellant timely appealed.
 {¶ 4} On appeal, appellant asserts the following single assignment of error:
THE TRIAL COURT ERRED IN DETERMINING THAT THE "GOING AND COMING" RULE EXCLUDED APPELLANT FROM COVERAGE UNDER A CONTRACT OF INSURANCE ISSUED BY CINCINNATI INSURANCE COMPANY.
 {¶ 5} Civ.R. 56(C) states that summary judgment shall be rendered forthwith if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 6} Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 65-66. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59.
 {¶ 7} Appellate review of summary judgments is de novo. Koos v. Cent.Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; MidwestSpecialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See Dresher; supra; Coventry Twp. v. Ecker
(1995), 101 Ohio App.3d 38, 41-42.
 {¶ 8} Since the underlying facts of this case are undisputed, there is no genuine issue of material fact for this court to consider. Rather, this case turns on the interpretation of the policies issued to CareStar by appellee. "The fundamental goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect." Burris v. Grange Mut. Cos. (1989), 46 Ohio St.3d 84, 89. "[I]nsurance contracts must be construed in accordance with the same rules as other written contracts." Hybud Equip. Corp. v. Sphere DrakeIns. Co., Ltd. (1992), 64 Ohio St.3d 657, 665. Words and phrases used in insurance policies ("must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined").Tomlinson v. Skolnik (1989), 44 Ohio St.3d 11, 12, quoting Gomolka v.State Auto. Mut. Ins. Co. (1982), 70 Ohio St.2d 166, 167-168.
 {¶ 9} Ambiguities in insurance policies should be construed liberally in favor of coverage. Yeager v. Pacific Mut. Life Ins. Co. (1956),166 Ohio St. 71, paragraph one of the syllabus. However, when the language used is clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning. Cincinnati Indemn. Co. v. Martin (1999), 85 Ohio St.3d 604, 607. A policy is not to be read as to extend coverage to absurd lengths or to be inconsistent with logic or the law. Lovewell v. Physicians Ins. Co. ofOhio (1997), 79 Ohio St.3d 143, 148.
 {¶ 10} One of the endorsements at issue here is the Uninsured Motorists Endorsement, which states, in part:
D. WHO IS AN INSURED
1. You or any family member
2. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
3. Anyone for damages he is entitled to recover because of bodilyinjury sustained by another insured.
(Ex. A to Oct. 28, 2004 Motion, Form CA 21 33 [Ed. 10 86]).
 {¶ 11} It is appellee's position that for uninsured motorists coverage to be available to appellant, Ms. Trick had to be in the course and scope of employment at the time of the accident, and since, according to appellee, Ms. Trick was not in the course and scope of employment at the time of the accident, she is not entitled to uninsured motorists coverage. Appellee relies on Westfield v. Galatis (2003),100 Ohio St.3d 216, in support of its position.
 {¶ 12} Appellant, however, also relies on Galatis in support of his position. According to appellant, in Galatis, the Supreme Court of Ohio adopted neither the "going and coming" rule, nor the phrase "in the course and scope of employment" as a bright-line rule for determining contractual coverage under an insurance policy. Rather, it is appellant's position that Galatis analyzed what benefit, if any, the employer received by virtue of the operation of the vehicle by the employee at the time of loss, and since there was no benefit inured to the corporation inGalatis, the court found that there was no coverage intended by the contracting parties.
 {¶ 13} We disagree with appellant's analysis of Galatis and find that appellant's reliance on Galatis is clearly misplaced.
 {¶ 14} In paragraph 2 of the syllabus of Galatis, the court stated:
Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment.[3]
 {¶ 15} The court in Galatis followed Scott-Pontzer v. Liberty Mut.Fire Ins. Co. (1999), 85 Ohio St.3d 660, to the extent that it held that an employee in the scope of employment qualifies as "you" as that term is used in the uninsured motorist endorsement. However, in limitingScott-Pontzer, the court in Galatis stated that Scott-Pontzer
dramatically departed from the court's, "sound rationale that an employee qualifies as "you" under a policy issued to a corporation only whenwithin the scope of employment," as set forth in King v. Nationwide Ins.Co. (1988), 35 Ohio St.3d 208. Id. at 223 (emphasis added). Further, the court discussed that one of the purposes of a commercial auto policy is to protect the policyholder, and that providing uninsured motorist coverage to employees who are not at work is detrimental to the policyholder's interest. Id. at 225. "Scott-Pontzer did not focus upon the critical inquiry of whether the loss occurred within the scope of employment." Id.
 {¶ 16} Thus, given the foregoing, it is clear that to obtain uninsured motorist coverage under an employer's policy like that at issue here, unless stated otherwise, the employee must be in the course and scope of employment to be afforded coverage.
 {¶ 17} Appellee argues that Ms. Trick was not in the scope of her employment at the time of loss because she was only en route to her place of employment. Appellant argues that the trial court erred in applying the "going and coming" rule as it is not applicable in the context of personal liability insurance, and even if it were, the policy at issue here fails to use unambiguous language to restrict coverage based on such rule for losses to insureds.
 {¶ 18} The "going and coming" rule was developed to assist in the determination of whether an injury suffered by an employee in a traffic accident occurs "in the course of" and "arises out of" the employment relationship so as to constitute a compensable injury under Ohio's Workers' Compensation laws. Ruckman v. Cubby Drilling (1998),81 Ohio St.3d 117, 119. "As a general rule, an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the required casual connection between injury and the employment does not exist." MTD Products, Inc. v. Robatin
(1991), 61 Ohio St.3d 66, 68, citing Bralley v. Daugherty (1980),61 Ohio St.2d 302. In determining whether an employee is a fixed-situs employee, and therefore, within the "going and coming" rule, the focus is on whether the employee commences his or her substantial employment duties only after arriving at a specific and identifiable work place designated by his employer. Ruckman, supra at 119, citing Indus. Comm.v. Heil (1931), 123 Ohio St. 603. "The focus remains the same even though the employee may be reassigned to a different work place monthly, weekly, or even daily. Despite periodic relocation of job sites, each particular job site may constitute a fixed place of employment." Id. at 120. "The relevant factor is whether the employee's substantial duties begin after arriving at the work site, however transient or flexible that work site is defined by the employer." Powell v. Grange Mut. Cas. Co.,
Columbiana App. No. 04 CO 8, 2005-Ohio-2957. While appellant is correct that this body of law developed in the realm of Ohio's Workers' Compensation laws, this rule has been extended to determine whether an employee was in the course and scope of employment for purposes of respondeat superior and uninsured motorist coverage. See Boch v. New YorkLife Ins. Co. (1964), 175 Ohio St. 458; Bodzin v. Martin, Cuyahoga App. No. 84066, 2004-Ohio-5390; Minton v. Fidelity and Guaranty Ins.Underwriters, Inc., Miami App. No. 04CA13, 2004-Ohio-5814.
 {¶ 19} Further, while not specifically titling it the "going and coming" rule, other Ohio appellate courts, including this Tenth District Court of Appeals, that have addressed this issue have determined that one commuting to and from their place of employment is not in the course and scope of employment for purposes of uninsured motorist coverage under his or her employer's insurance policy. See Preston v. Preston, Franklin App. No. 03AP-464, 2003-Ohio-6442. See, also, Reese v. Fidelity Guaranty Ins. Underwriter, Cuyahoga App. No. 83606 (holding that an employee who was on her way to work when she was injured was not acting in the course of her employment, and was therefore not an insured under her employer's policy and was not entitled to uninsured motorist coverage.); Troiano v. Steitz, Delaware App. No. 04CAE02013, 2004-Ohio-4811
(acknowledging that a commute to a fixed site does not fall under a "within the course and scope" definition, thus the plaintiff was not entitled to uninsured motorist coverage under her employer's insurance policy.); Stayden v. Motorists Ins. Co., Clermont App. No. CA2003-05-044, 2004-Ohio-1505 (holding that an employee traveling to and from a fixed place of work is not within the course of employment, and thus not entitled to uninsured motorist coverage under employer's policy.)
 {¶ 20} In Preston, the plaintiff was injured in a car accident that occurred while he was being driven to work by his wife in a car owned by her. The plaintiff's employer had a business auto policy that provided uninsured/underinsured motorist coverage. This court cited paragraph two of the syllabus in Galatis, previously set forth in this opinion, and cited the following language from Boch v. New York Life Ins. Co. (1964),175 Ohio St. 458:
As a matter of law, a master is not liable for the negligence of his servant while driving to work at a fixed place of employment, where such driving involves no special benefit to the master other than the making of the servant's services available to the master at the place where they are needed.
Preston at ¶ 6.
 {¶ 21} Because there was no evidence that the plaintiff in Preston was in the course and scope of his employment at the time of the accident, and there was no language in the policy to the contrary, this court concluded that he was not entitled to uninsured/underinsured motorist coverage.
 {¶ 22} While the issue of whether employees are acting within the scope of their employment is a question of fact to be decided by the jury, when reasonable minds can come to but one conclusion does the issue regarding scope of employment becomes a question of law. Reese, supra. In the case before us, Ms. Trick was hired to provide in-home health care for Mr. Schaeffer, the only patient under Ms. Trick's care. Ms. Trick's duties and hourly wage did not commence until she arrived at the Schaeffer home, and Ms. Trick was not paid for travel to and from the Schaeffer home. Thus, because Ms. Trick was driving to work at a "fixed place of employment," she was not acting in the course and scope of her employment when the accident occurred.
 {¶ 23} To avoid this result, appellant relies on the Hired and Non-Owned Auto Endorsement contained in the liability portion of the policy issued to CareStar. Said endorsement provides, in part:
NON-OWNERSHIP LIABILITY
The insurance applies to bodily injury or property damage arising out of:
The use of any non-owned automobile in the business of the namedinsured by any person other than the named insured.
(Ex.1 to Nov. 30, 2004 Memorandum Contra, Form LC-1061 [10/82] Revised.)
 {¶ 24} It is appellant's position that this endorsement modified the policy to include coverage for non-owned automobiles, such as the one Ms. Trick was driving, so long as the automobile is being driven "in the business of" CareStar. Appellant argues that Ms. Trick was operating the vehicle clearly "in the business of" CareStar, and is therefore entitled to coverage under the policy. However, we find that appellant's argument is flawed for two reasons.
 {¶ 25} As argued by appellee, the language relied upon by appellant is found in the liability section of the policy. What appellant is seeking is uninsured motorists coverage, and the Uninsured Motorists Endorsement does not contain the language relied upon by appellant. Thus, the above-cited language has no application to the matter before us.
 {¶ 26} Secondly, even if we relied on such language, we still could not find that Ms. Trick is entitled to coverage. To find as appellant suggests, that commuting to and from one's place of employment constitutes acting "in the business of" the employer under these circumstances, when we have already stated the well-established law in Ohio that commuting to and from one's place of employment does not constitute acting in the course and scope of employment, would be contrary to the rationale of Galatis. In Galatis, the Supreme Court of Ohio discussed that while an ambiguity is construed in favor of one who has been determined to be an insured, an ambiguity in the preliminary question of whether a claimant is an insured is construed in favor of the policyholder. Galatis, supra, at 224. If the policyholder's interest is not considered in the initial phase, a risk of construing the policy against the policyholder develops. Id.
 {¶ 27} Even though the court in Galatis was concerned with the language of an uninsured/underinsured motorists coverage endorsement, the above-stated premise of contract interpretation is equally applicable to the endorsement before us. To construe the endorsement in the manner that appellant suggests does not consider the policyholder's interest, but rather the claimant's, which is clearly contrary to the intent and rationale of Galatis. While it is true that travel to and from one's place of employment constitutes some level of benefit to one's employer, it is equally true that virtually any aspect of preparing for one's employment also provides some level of benefit to one's employer. However, to avoid illogical results, like those that arose in the aftermath of Scott-Pontzer and Ezawa v. Yasuda Fire Marine Ins. Co. ofAm. (1999), 86 Ohio St.3d 557,[4] we find that pursuant to the language of the endorsement relied upon by appellant, when construed in favor of the policyholder, Ms. Trick is not an insured under the policy, and is therefore not entitled to uninsured motorists coverage. At the time of loss Ms. Trick was merely enroute to her place of employment and was neither acting "in the business of" CareStar nor in the course and scope of CareStar's employment.
 {¶ 28} Because Ms. Trick was not in the course and scope of her employment at the time of loss, she is not an insured under her employer's policy, and is therefore not entitled to uninsured motorist coverage. Accordingly, appellant's assignment of error is overruled.
 {¶ 29} For the foregoing reasons appellant's assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Brown, P.J., and French, J., concur.
[1] Ms. Trick remained in a comatose state as of the filing of the Joint Stipulation on January 7, 2005.
[2] Appellant obtained a default judgment against the tortfeasor in the amount of $1,485,659 pursuant to the Fairfield County Court of Common Pleas' Judgment Entry filed on Aug. 6, 1993. Appellant has also received $100,000 from Ms. Trick's personal auto insurer. Therefore, appellee would be entitled to a $100,000 set off of the damages in the event coverage is available to appellant.
[3] We note that the endorsement at issue here is nearly identical to that discussed in Galatis.
[4] In Ezawa, the Supreme Court of Ohio expanded upon Scott-Pontzer by holding that the same policy form also provided uninsured motorists coverage to a resident relative of an employee of a corporate policyholder. In Galatis, in addition to limiting Scott-Pontzer, the Supreme Court of Ohio also overruled Ezawa.